UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

FARID POPAL,                                  :

                           Plaintiff,          :

          -against-                            :

HARVEY J. SLOVIS,                             :

                           Defendant.          :

--------------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   3/27/2013
```

**REPORT AND
RECOMMENDATION TO
THE HONORABLE
LORNA G. SCHOFIELD**

12 Civ. 3916 (LGS) (FM)

**FRANK MAAS,** United States Magistrate Judge.

On August 2, 2002, Farid Popal ("Popal") was arrested in Freemont,

California and extradited to New York, where he was charged with the 1999 murder of

Samiya Haqiqi ("Haqiqi"). Following a trial, Popal was convicted of Murder in the

Second Degree, among other charges, and sentenced to twenty-five years to life. He is

currently serving that sentence at the Wende Correctional Facility in Erie County, New

York.

Popal's counsel in the criminal case was Harvey Slovis, Esq. ("Slovis").

On March 23, 2012, Popal filed this pro se diversity suit against Slovis. (ECF No. 1). In

his amended complaint, Popal alleges, inter alia, that Slovis quoted him a $50,000 flat fee

for a six-week trial, but failed to return any portion of that fee although the trial lasted

only twenty days. (ECF No. 33 ("Amended Complaint" or "Am. Compl.")). Popal also

alleges impropriety related to Slovis' handling of certain bail release funds. (See id.).

The Amended Complaint contains claims charging Slovis with breach of contract,

misrepresentation, undue influence, and breach of fiduciary duty, and seeks damages in excess of $75,000.  A similar suit previously was pending in state court.

Slovis now has moved to dismiss this action for want of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  (ECF No. 34).  For the reasons explained below, the motion should be denied.

I.    Background

Popal moved from Afghanistan to the United States in 1989.  (ECF No. 36 (Aff. of Francis Karam, Esq., sworn to on Jan. 15, 2013 ("Karam Aff."), Ex. 10 ("Popal Dep.") at 14-15)).  From 1989 to 2000, he resided in New York while working in an auto mechanic shop.  (Id. at 15).  In July 1999, Popal began dating Haqiqi.  (Karam Aff., Ex. 8 at 7).  On November 12, 1999, Haqiqi disappeared after apparently having ended her relationship with Popal earlier that evening.  (Id. at 2).  When investigators called Popal on November 15, he stated that he was "apartment hunting," but would voluntarily come to the station for questioning.  (Id.).  Two days later, Popal contacted the police to report that his car had been stolen.  (Id. at 8).  Two days after that, Popal was arrested for filing a false report for a stolen vehicle.  (Karam Aff., Ex. 9 at 3-4).  He was questioned again about Haqiqi's disappearance but apparently was not detained.[1]  (Id.).

---

[1]      At trial, the prosecution introduced evidence that Popal had murdered Haqiqi, incinerated her body at the auto shop, and disposed of other evidence, including his car.  (See id. at 2-3).  Popal continues to deny any involvement in Haqiqi's disappearance.  (Popal Dep. at 16).

Early in 2000, Popal left New York to stay with family members in Canada. (Popal Dep. at 15-16). In March or April 2000, he moved to California, after accepting a job as a transmission rebuilder in San Jose. (Id. at 16). Popal's father accompanied him to California, where Popal claims the "rest of [his] family" had been living "for decades." (Id. at 42). In California, Popal stayed "at a friend's house," but later that year moved to Nevada, where he obtained a driver's license. (Id. at 18-19, 30). A few months later, Popal returned to California and opened "Gear to Gear Transmissions," an auto shop that he operated in partnership with his father. (Id. at 19). The tax returns for that business state that it started on January 1, 2002. (Karam Aff., Exs. 3-4). Popal also opened a bank account in his name and obtained a California driver's license that listed an address in Concord, California. (Karam Aff., Ex. 2; Popal Dep. at 22). At some point, Popal married a woman named Estorei in a religious ceremony, although the two were never legally married. (Popal Dep. at 30, 33). Popal remained in California until his arrest in August 2002. (Id. at 16; Karam Aff., Ex. 8 at 3).

II.     Legal Standard

Under Rule 12(b)(1), a court must dismiss a complaint if it lacks subject matter jurisdiction over the claims asserted. In resolving the issue of subject matter jurisdiction, a court is not limited to the face of the complaint and may consider evidence outside the pleadings. Phifer v. City of N.Y., 289 F.3d 49, 55 (2d Cir. 2002). The plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. Id. (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir.

2000); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998)

("jurisdiction must be shown affirmatively, and that showing is not made by drawing

from the pleadings inferences favorable to the party asserting it")).

III.    Analysis

      A.    Diversity Jurisdiction

          Slovis argues that the Court lacks jurisdiction to hear Popal's claims

because there is no diversity of citizenship between the parties.  (See ECF No. 35 (Def.'s

Mem. of Law in Supp. of Def.'s Mot. to Dismiss) ("Def.'s Mem.") at 3-10).

          Federal courts are empowered to hear actions brought between "citizens of

different states" provided that the amount in controversy exceeds $75,000.  28 U.S.C.

§ 1332(a)(1).  Citizenship is determined at the time a suit is filed.  Linardos v. Fortuna,

157 F.3d 945, 947 (2d Cir. 1998).  "An individual's citizenship . . . is determined by his

domicile," which is "the place where a person has his true fixed home and principal

establishment, and to which, whenever he is absent, he has the intention of returning."

Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation

marks and citations omitted).  A prisoner, even when incarcerated elsewhere, generally

retains his pre-incarceration domicile.  Braten v. Kaplan, No. 07 Civ. 8498 (HB), 2009

WL 614657, at * 3 (S.D.N.Y. Mar. 10, 2009).

          "A person's domicile, once established, is presumed to continue absent

evidence that it has been changed."  Gutierrez v. Fox, 141 F.3d 425, 427 (2d Cir. 1998).

A party seeking to establish a change in his domicile must prove that change by clear and

convincing evidence.  <u>Bank of India v. Subramanian</u>, No. 06 Civ. 2026 (WHP), 2007 WL

1424668, at *3 (S.D.N.Y. May 15, 2007) (citing <u>Palazzo</u>, 232 F.3d at 42).  Factors that

may be considered in that determination include the party's "current residence, voting

registration, driver's license and automobile registration, location of brokerage and bank

accounts, membership in fraternal organizations, churches, and other associations, places

of employment or business, and payment of taxes."  <u>Kennedy v. Trustees of the</u>

<u>Testamentary Trust of the Last Will and Testament of President John F. Kennedy</u>, 633 F.

Supp. 2d 77, 81 (S.D.N.Y. 2009) (citations omitted).

   The evidence in this case conclusively demonstrates that Popal was

domiciled in California at the time of his arrest.  After moving to California in 2000,

Popal was employed at an auto shop before later opening his own transmission business.

He filed taxes for that business in California.  (<u>See</u> Karam Aff., Exs. 3-4).  He also

opened a bank account there and obtained a driver's license with a California address.

Additionally, Popal's "wife" and immediate family resided nearby.  At the time of his

arrest, Popal had been living in California continuously, with the exception of his brief

stay in Nevada, for about one and one-half years.  There is no evidence that after moving

to California Popal returned to New York for any purpose, owned or rented property

there, or expressed an intention to return.  Instead, all of the available evidence suggests

that Popal's intent was to remain in California for an indefinite period of time.  This is

sufficient to establish his California citizenship for purposes of diversity jurisdiction.

   Slovis contends that Popal's deposition testimony regarding his intention to

remain in California should not be credited because it is "self serving" and contrary to

representations that he made in a complaint in an identical action that he filed against Slovis in Supreme Court, Erie County in 2009.  In that state court complaint, Popal alleged that he was living at the Wende Correctional Facility in Alden, New York, and thus was a "resident" of Erie County.  (Karam Aff., Ex. 6 at 3).  However, "[a] person may be a resident of one locality but be domiciled in another."  Linardos, 157 F.3d at 948.  Here, it is clear that Popal was a "resident" of Erie County at the time he filed the state court suit.  Indeed, he was imprisoned there.  Nevertheless, the fact that Popal was incarcerated in Erie County does not mean, as Slovis argues, that this was also his domicile.  (See ECF No. 37 (Pl.'s Affirm. in Opp. to Def.'s Mot. to Dismiss) ("Pl.'s Opp. Mem.") at 5.

Slovis further contends that Popal retained his New York citizenship, despite having moved to California, because he left New York as a "fugitive" in an effort to evade investigation in the Haqiqi murder.  (Def.'s Mem. at 7-8).  It is questionable whether Popal can properly be described as a fugitive since a warrant for his arrest had not been issued when he left New York.  In any event, mere fugitivity does not bar Popal from having become domiciled in California after moving there, because "[a] fugitive from justice can establish a legal 'domicile' where he is in hiding."  Bower v. El-Nady, 844 F. Supp. 2d 191, 195 (D. Mass. 2012) (quoting United States v. Otherson, 480 F. Supp. 1369, 1371 n.4 (D.C. Cal. 1979)); cf. Stifel v. Hopkins, 477 F.2d 1116, 1123 (6th Cir. 1973) ("Refugees or fugitives, who leave their homes because of unhappiness with existing political conditions, fear of physical harm, or apprehension of prosecution can establish domiciles within the jurisdictions in which they seek asylum").

6

Slovis cites several cases which stand for the proposition that a fugitive whose whereabouts are unknown is likely a citizen of the jurisdiction in which he was domiciled before having fled.  See Lloyd v. Leffler, 694 F.2d 489, 490 (7th Cir. 1982) ("We have found no case involving the question of the domicile for diversity purposes of a fugitive from justice. . . . Probably the last domicile of the fugitive before he fled should be his domicile for diversity purposes"); Howell by Goerdt v. Tribune Entertainment Co., 106 F.3d 215, 218 (7th Cir. 1997) (". . . the domicile of a fugitive defendant will be taken to be his domicile before he fled"); Mut. Assignment & Indemnification Co. v. Lind-Waldock & Co., LLC, 364 F.3d 858 (7th Cir. 2004) ("Maydak's citizenship likely is his domicile before going on the lam").  While the reasoning of those cases may well be correct, they are inapposite because Popal's whereabouts were not unknown.  Bower, 844 F. Supp. 2d at 195.  Thus, Popal's domicile must be "determined by applying the usual rule – presence in a place coupled with the intent to remain there, determined as of the time litigation commences."  Id.

Popal's reasons for leaving New York may, of course, be relevant in determining whether he realistically intended to remain in California, since someone who flees in order to escape an investigation may hope to return home if it is closed without an arrest.  Here, however, there simply is no evidence to suggest that Popal was merely hiding out in California temporarily.  To the contrary, the evidence persuasively shows that he had begun a new life there.  As noted above, Popal had opened his own business, paid California taxes, obtained a California driver's license, deposited funds in a local

bank account, and resided in the state in the vicinity of close family.  All of these actions clearly indicate an intention to remain in California.

In his papers, Slovis cites two cases, <u>Hickox v. Centre Daily Times</u>, No. 4:10-CV-1931, 2011 WL 2446313 (M.D. Pa. Mar. 30, 2011) (Report & Rec. of Carleson, Mag. J.), and <u>Durst v. Siegler</u>, No. 04 Civ. 6981 (RMB), 2005 WL 3358599 (S.D.N.Y. Dec. 7, 2005), neither of which compels a different result.  In <u>Hickox</u>, a plaintiff on probation obtained permission to "visit" his uncle in the State of Washington.  2011 WL 2446313, at *2.  Despite having been in Washington for only a few months, the plaintiff claimed (but offered no documentary evidence) that he had obtained a Washington driver's license, secured employment as a bus driver, operated his own business as a notary public, and intended to become a citizen of Washington.  <u>Id.</u> at *2, *5.  Accepting the plaintiff's assertions at face value, the court nevertheless determined that he had failed to meet his burden, due in large part to "the many indications in the record that strongly suggest[ed] [his] continued ties to [Pennsylvania]," including the fact that he had been in Washington for only a short period of time, and had agreed to notify his probation officer immediately upon "returning home."  <u>Id.</u> at *4-5.  <u>Durst</u> is similar in that the court determined that the plaintiff had not established a change in citizenship (from New York to Texas) because he retained significant connections to his former domicile.  2005 WL 3358599, at *7.  Specifically, the plaintiff continued to maintain an apartment in New York where he stayed a "couple months a year," had a spouse who lived in New York, conducted substantial personal financial dealings there, and kept a New York mailing address because he "spent a minority of [his] time in Texas."  <u>Id.</u>

Here, by comparison, there is absolutely no evidence that Popal retained any connections to New York after he moved to California. In an effort to fill this evidentiary lacuna, Slovis notes that when Popal was called by the police in 1999, he stated that he was "apartment hunting," thereby arguably indicating an intention to remain in New York. (Def.'s Mem. at 9). This, however, was <u>before</u> Popal moved. In any event, even if the Court were to assume that Popal always hoped to return to New York eventually, a "floating intention . . . to return to a former domicile at some undetermined future time will not defeat the acquisition of a new domicile for diversity purposes." <u>Blumatte v. Quinn</u>, 521 F. Supp. 2d 308, 312 (S.D.N.Y. 2007) (quotations and citations omitted).

In sum, because Popal has produced abundant evidence of his intent to remain in California at the time of his arrest, and maintained no substantial ties to New York, diversity jurisdiction exists.

B.   *Colorado River* Abstention

Slovis argues in the alternative that the Court should "decline to exercise jurisdiction" pursuant to the abstention doctrine set forth in <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976). (Def.'s Mem. at 10-12). In <u>Colorado River</u>, the Supreme Court held that a federal court may abstain from considering a case that is the subject of parallel state proceedings, in "exceptional circumstances," where resolution of the state court suit would result in a "comprehensive disposition of litigation" and conserve judicial resources. 424 U.S. at 813, 817-18.

"Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp, 108 F.3d 17, 22 (2d Cir. 1997) (citing Telesco v. Telesco Fuel & Masons' Materials, Inc., 765 F.2d 356, 362 (2d Cir. 1985)).  The Second Circuit has identified six factors that courts should consider in determining whether abstention is appropriate:  "(1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights." Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100-01 (2d Cir. 2012) (quoting Woodford v. Cmty. Action Agency of Greene Cnty., 239 F.3d 517, 522 (2d Cir. 2001)).

It is undisputed that Popal filed an essentially identical action in 2009 against Slovis in Supreme Court, Erie County.  (See Karam Aff., Ex. 6).  Thereafter, on October 30, 2012, however, Popal filed an affirmation seeking to withdraw his complaint in that action.  (Pl.'s Opp. Mem., Ex. D).  Although it is unclear whether there was a formal order of dismissal, the New York State Unified Court System website lists the date of the last appearance in the case as November 18, 2011, and further describes the "Case

Status" as "Disposed."[2]  Although Slovis' papers fail to make mention of the lack of any

progress in the Erie County action, the point is crucial since <u>Colorado River</u> abstention is

premised on there being duplicative litigation ongoing in state court.  <u>Colorado River</u>, 424

U.S. at 817.  Here, because Popal's state court action appears to have been discontinued

(or is at least dormant), there is no basis for abstaining from exercising jurisdiction over

this case.  <u>See</u>, <u>e.g.</u>, <u>Mohamad v. Smith</u>, No. 09-943, 2010 WL 4637967, at *1 (W.D. Pa.

Nov. 8, 2010) (deeming <u>Colorado River</u> abstention inappropriate because the plaintiff

filed a motion to discontinue the action and the county court reported the case as

"discontinued") (citing <u>Superior Diving Co. v. Cortigene</u>, 372 F. App'x 496, 498 (5th Cir.

2010)).

IV.   <u>Conclusion</u>

      For the foregoing reasons, Slovis' motion to dismiss should be denied.

V.   <u>Notice of Procedure for Filing of Objections to this Report and Recommendation</u>

      The parties shall have fourteen days from the service of this Report and

Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule

72(b) of the Federal Rules of Civil Procedure.  <u>See also</u> Fed. R. Civ. P. 6(a) and (d).  Any

such objections shall be filed with the Clerk of the Court, with courtesy copies delivered

to the chambers of the Honorable Lorna G. Schofield and to the chambers of the

undersigned at the United States Courthouse, 500 Pearl Street, New York, New York

10007, and to any opposing parties.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

---

[2]     A telephone inquiry that my Chambers made to the Office of the Clerk of Erie
County confirmed that this disposition is correct.

72(b). Any requests for an extension of time for filing objections must be directed to Judge Schofield. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:     New York, New York
           March 27, 2013

                                        FRANK MAAS
                              United States Magistrate Judge

Copies to:

Honorable Lorna G. Schofield
United States District Judge

Francis P. Karam, Esq. (by ECF)

Farid Popal (by United States Mail)
DIN # 06-A-2870
Wende Correctional Facility
Post Office Box 1187
Alden, New York 14004-1187